(No. 4983— ▇▇▇▇▇▇)

Mary June Schempp, Administrator of the Estate of Wallace Schempp, Deceased, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed March 29, 1963.*

Schmiedeskamp, Deege and Lewis, Attorneys for Claimant.

William G. Clark, Attorney General; C. Arthur Nebel, Assistant Attorney General, for Respondent.

PERLIN, C. J.

Claimant seeks recovery of $25,000.00 as Administrator of the Estate of Wallace Schempp for his alleged wrongful death as a result of a two-car collision at the junction of U.S. Route No. 24 and Illinois Route No. 96, about six miles north of Quincy, Illinois.

The accident occurred on December 17, 1960 at approximately 10:30 A.M., when Wallace Schempp was returning from Mendon, Illinois, to his place of residence in Quincy, Illinois. He frequently traveled on this highway.

U.S. Highway No. 24 was a newly constructed limited access, divided freeway, consisting basically of four lanes running in a northeasterly-southwesterly direction. This highway intersects with Illinois Highway No. 96, a two lane highway, which runs in a due north and south direction, and crosses U.S. Highway No. 24 on the same level.

According to eyewitness, James Russell Williams, who was stopped at the intersection stop sign on Route No. 96, the 1954 Ford car driven by Mr. Schempp was approaching from the east on Route No. 24, and making a left turn to the south onto Route No. 96. Mr. Williams also saw a 1951 Cadillac traveling east on Route No. 24. When Mr. Williams first noticed the Ford, it was in the left-hand turn lane on Route No. 24, and was traveling slowly across the northerly of the two lanes for eastbound traffic. The Ford was approximately in the middle of the east bound lanes when it was struck by the Cadillac. After the impact, the Ford was knocked in an easterly direction, and a man, later identified as Mr. Schempp, flew out of the door of the Ford. Mr. Williams said that, in his opinion, the Cadillac was not traveling excessively fast. He did not know if the Ford had come to a com-

plete stop before it made the left turn, since it was in the process of turning at the time he first saw it.

The record shows that Wallace Schempp died 45 minutes after arrival at St. Mary's Hospital as a result of a skull fracture, brain damage, shock and fractures of the arm and forearm.

Claimant contends that respondent was negligent in its duty to regulate, warn and guide traffic by failing to place proper signs and markings at the intersection, since the intersection was allegedly confusing and hazardous. Claimant further contends that the 1959 Ill. Rev. Stats., Chap. 95½, Sec. 126, imposed the duty to provide signs and markings by the following language:

"The Department shall place and maintain such traffic-control devices. . .on all highways under its jurisdiction, as it shall deem necessary to indicate and to carry out the provisions of this Act, or to regulate, warn or guide traffic."

John R. Short, an Illinois State Police Trooper, who investigated the accident, testified that there were stop signs for Route No. 96 at the intersection, but there were no traffic control signs for traffic approaching from the west on Route No. 24. There was one small sign with black and white stripes situated on the dividing island, which was visible to traffic approaching from the east.

Trooper Short stated that the surface of the road at the intersection was dry at the time of the accident, and the road was clear. He also testified that the Ford had been struck in the right front end by the Cadillac.

Before claimant can recover damages from the State, she must prove that Wallace Schempp was in the exercise of due care and caution for his own safety; that the State of Illinois was negligent, as charged in the complaint; and, that such negligence was the proximate cause of the accident. *McNary* vs. *State of Illinois,* 22 C.C.R. 328, 334;

*Bloom* vs. *State of Illinois*, 22 C.C.R. 582, 585; *Link* vs. *State of Illinois*, No. 4719.

Nowhere in the record is there evidence that Wallace Schempp was in the exercise of due care and caution for his own safety. From the evidence adduced, we must conclude to the contrary. Ill. Rev. Stats., 1959, Chap. 95½, Sec. 166, provides as follows:

"The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction, which is within the intersection or so close thereto as to constitute an immediate hazard, but said driver, having so yielded and having given a signal when and as required by this Act, may make such left turn, and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right of way to the vehicle making the left turn."

There is no evidence that Schempp had stopped in order to yield to oncoming traffic, or that he had signaled. His car was in motion when it was seen by the witness. The Cadillac was apparently traveling at a reasonable speed.

Route No. 24 had been completed several weeks before the accident, and Schempp was evidently familiar with the road and the intersection, having been in the habit of traveling on the road to Mendon to get his hair cut. According to the testimony, he had probably passed the intersection in question on the morning of the accident.

Schempp was not, in our opinion, met with a condition, which was extremely and inherently dangerous and hazardous, or unknown to him. He knew he was crossing two lanes of a limited access freeway. There was no danger of his being struck in the rear on Route No. 24, as contended by claimant, since the highway had an additional lane at the intersection for the sole use of automobiles making left turns onto Route No. 96.

The statutory duty imposed upon the State by the 1959 Ill. Rev. Stats., Chap. 95½, Sec. 126, is only to "place and maintain such traffic control devices . . . as it shall deem necessary . . .". The statutory regulations covering the conduct of left turns at all unmarked intersections would constitute a sufficient guide for drivers in such circumstances. The fact that the State subsequently posted a stop sign for westbound cars turning left onto Route No. 96 does not manifest any negligence of respondent prior thereto.

The proximate cause of this accident was the lack of due care exercised by either the deceased or the driver of the Cadillac. It was in no way the result of any act or omission by the State of Illinois.

This Court sympathizes with the great hardship imposed upon the widow and child of the deceased, because of their loss of the head of the family. However, we have consistently held that the State of Illinois is not an insurer of all persons traveling upon its highways. Claimant has failed to prove that the deceased was free from contributory negligence, or that the negligence of respondent was the proximate cause of the accident.

An award to claimant is, therefore, denied.